Robert S. Malone
209 N. Elden Street
Flagstaff, AZ 86001
Arizona Bar No. 017352
bobsmalone@gmail.com
(928) 779-1560

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

|  |  |
|---|---|
| Bruce Yazzie,<br><br>　　　Plaintiff,<br><br>vs.<br><br>Office of Navajo and Hopi Indian Relocation, an administrative agency of the United States<br><br>　　　Defendant. | No.<br><br>COMPLAINT FOR JUDICIAL REVIEW |

1. This action is brought by Plaintiff, Bruce Yazzie, to obtain judicial review of an administrative decision of the Office of Navajo and Hopi Indian Relocation, Defendant, holding that Mr. Yazzie is not entitled to relocation assistance benefits pursuant to the Navajo-Hopi Land Settlement Act, Pub. L. No. 93-531, §12, December 22, 1974, 88 Stat. 1716, and the regulations promulgated thereunder. The agency, in an action that is arbitrary and capricious, and not in accordance with law,

wrongly decided that Mr. Yazzie, although a resident of the Hopi Partitioned Lands at the requisite time, had not attained the status of head of household at the time he was forced to relocate, and that he is therefore not eligible to receive relocation assistance benefits.

**INTRODUCTION**

2. In 1962 a three-judge panel of this Court determined that, "the Hopi and Navajo Indian Tribes have joint, undivided, and equal interests as to the surface and sub-surface including all resources appertaining thereto, subject to the trust title of the United States," of the majority of a 70 by 55 mile tract of Native American reservation land in Arizona.1 *Healing v. Jones*, 210 F. Supp. 125, 192 (D. Ariz. 1962), *aff'd,* 373 U.S. 758 (1963) (*per curiam*). This area became known as the Joint Use Area ("JUA").

3. In 1974 the United States Congress, in response to Hopi complaints that their tribe was not receiving equal use of the JUA, enacted the Navajo-Hopi Land Settlement Act ("Settlement Act"), Pub. L. No. 93-531, §12, December 22, 1974, 88 Stat. 1716, which authorized partition of the JUA between the two tribes.

---

1The *Healing* court found that the Hopi Tribe had exclusive use to approximately one sixth of the reservation land in question, encompassing all of the Tribe's historic villages and "classified as the District Six area…" *Healing*, 210 F. Supp., at 191.

2

4. The Settlement Act provided for a program to compensate the thousands of tribal members, overwhelmingly Navajo, who would be forced to relocate from their homes on land partitioned to the other tribe.

5. The Settlement Act is to be implemented so as to "ensure that persons displaced as a result of the Act are treated fairly, consistently, and equitably so that these persons will not suffer the disproportionate adverse, social, economic, cultural and other impacts of relocation." 25 C.F.R. § 700.1(a).

6. The Settlement Act provided for the creation of an independent federal agency, now known as the Office of Navajo and Hopi Indian Relocation ("ONHIR"), to administer this involuntary relocation.

7. In order to be eligible for relocation compensation a Navajo applicant must have been a legal resident of land partitioned to the Hopi Tribe from at least December 22, 1973 through at least December 22, 1974, and also must have become a head of household by the date they relocated from the Hopi Partitioned Lands ("HPL"). 25 C.F.R. § 700.147; Pub. L. No. 93-531 § 15(c), Dec. 22, 1974, 88 Stat. 1719. [2]

8. Mr. Yazzie meets these eligibility requirements and is thus entitled to relocation benefits. ONHIR, and the Hearing Officer ("HO"), recognized that Mr. Yazzie was a resident of the HPL through December 22, 1974. The sole issue at Mr.

---

2 Formerly codified at 25 U.S.C. § 640d-14(c).

Yazzie's Appeal Hearing was whether he had attained the status of head of household at the time he relocated from his HPL home. Mr. Yazzie proved that he had obtained head of household status by the time he permanently departed from his HPL home by earning income in the years 1978 and 1979 greater than the requisite annual amount ONHIR requires for self-support.

9. ONHIR'S denial of relocation benefits to Mr. Yazzie is arbitrary and capricious, not supported by substantial evidence, and not in accordance with law.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, 5 U.S.C. §701, *et. seq.*, and the Settlement Act, Pub. L. No. 93-531 §12, December 22, 1974, 88 Stat. 1716.

11. Mr. Yazzie has exhausted his administrative remedies.

12. Venue is proper in this District pursuant to Pub. L. No. 93-531 §15(g), December 22, 1974, 88 Stat. 1719, as amended by pub. L. 100-666 §10, July 8, 1980, 102 Stat. 3929, November 16, 1988, which directs that appeals of ONHIR eligibility determinations are to be brought in this Court.

## PARTIES

13. Plaintiff, Bruce Yazzie, is an enrolled member of the Navajo Nation forced to relocate from his HPL home as a consequence of the Settlement Act.

14. Defendant, Office of Navajo and Hopi Indian Relocation, is an independent federal agency created by the U.S. Congress pursuant to the Settlement Act to effectuate the relocation of members of the Navajo and Hopi tribes who resided on land partitioned to the tribe of which they are not members, and to provide relocation assistance benefits to all households required to relocate. ONHIR has a fiduciary duty to administer its program in a fair and impartial manner and to ensure that those forced to relocate receive the full benefits to which they are entitled.

## **FACTS**

15. Bruce Yazzie was born May 8, 1960. His family resided in White Cone on the joint reservation, and had two seasonal camps, both of which were located on land later partitioned to the Hopi Tribe.

16. Mr. Yazzie applied to ONHIR for relocation benefits on March 17, 2009. His application was denied by letter from the agency dated December 26, 2012.

17. ONHIR's letter states as a basis for denying Mr. Yazzie's application that: "There is uncertainty regarding the date you moved off the HPL" The letter also notes: "ONHIR records indicate that you relocated with your mother … on December 7, 1979."

18. The denial letter further notes that Mr. Yazzie's Social Security Statement shows that he "first earned $1,300 or more per year in 1978." This is the amount of

income ONHIR has determined to be sufficient to find an applicant has attained head of household status through self-support.

19. Mr. Yazzie filed a Notice of Appeal of ONHIR's denial of benefits, and an Appeal Hearing before the Independent Hearing Officer was held February 24, 2017.

20. At the Appeal Hearing Mr. Yazzie testified, as did his brother, Merlin Yazzie. ONHIR called no witnesses.

21. On May 12, 2017, the HO entered his Decision, ruling against Mr. Yazzie and upholding ONHIR's denial of benefits.

22. In his Findings of Fact the HO states that in 1978 Mr. Yazzie earned $1,656 and earned $2,096 in 1979.

23. The HO decided that Mr. Yazzie, despite having earned in each of the two years prior to his departure from the HPL, the level of income ONHIR has established as sufficient to constitute self-support, was not self-supporting by then because when he temporarily resided in New Mexico for employment and schooling he lived with siblings and paid no rent.

24. In the history of ONHIR's operation of the relocation assistance program the agency has relied on evidence of annual income above $1,300 to determine that an applicant had achieved head of household status on the basis of self-support without inquiring as to how much the applicant expended on "rent."

25. In the Credibility Findings of his Decision the HO found Bruce Yazzie

to be "a credible witness but his testimony about the frequency of his visitation to his parents' home in White Cone before their relocation is not credible."

26. The HO offered no basis for declaring that the portion of Mr. Yazzie's testimony regarding his presence at his HPL home while living temporarily in New Mexico lacked credibility. Thus, the HO failed to provide the specific and cogent reasons legally required for an adverse credibility finding as to a witness' testimony.

27. The HO stated in his Decision: "Applicant conceded at the appeal hearing that his memory was faulty about events that occurred during 1978 and 1979 and that he had to 'jog my memory' in order to provide testimony during the hearing. . . . . . One may infer that, because of the memory lapses, combined with the objective evidence, applicant was not a legal resident of his parents' household before they relocated in 1979."

28. Only once in the twenty-two-page transcription of Mr. Yazzie's hearing testimony does he make reference to "memory lapses," when in response to the question of whether he lived with his brother in the summer of 1976 or of 1978 he replies: "[I]t's been 38 years, I really can't. I really had to jog my memory, you know, kind of go back." The HO embellished this single response to find that Mr. Yazzie's "memory was faulty," and call into question his entire testimony.

29. The HO's Decision demonstrates a failure to objectively evaluate all evidence introduced at the Appeal Hearing, by failing to support his adverse

7

credibility determination as to a critical area of Mr. Yazzie's testimony, and by concluding that Mr. Yazzie's "memory was faulty" throughout his testimony because of his response to a single question.

30. ONHIR issued Final Agency Action on Mr. Yazzie's claim on June 1, 2017, affirming the HO's denial of relocation benefits.

31. Mr. Yazzie did not receive a fair hearing. An objective appraisal of the testimony presented at the Appeal Hearing shows that the HO arbitrarily failed to properly credit testimony that Mr. Yazzie had maintained his primary residence on the HPL until December 1979, and that by that time he had attained the status of head of household.

32. The Administrative Record establishes that ONHIR's denial of Mr. Yazzie's claim for relocation benefits is arbitrary, capricious and an abuse of discretion; that it is not supported by substantial evidence; is not in accordance with applicable law; and that it occurred without observance of procedures required by law.

## **CLAIM FOR RELIEF**

33. Plaintiff Bruce Yazzie complains that Defendant ONHIR's decision to deny him relocation assistance benefits to which he is entitled as a matter of law adversely affects him.

34. ONHIR's final decisions regarding eligibility determinations are subject to judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

35. This Court shall set aside an agency decision that is, "unsupported by substantial evidence," or that is, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [.]" 5 U.S.C. § 706(2)(A) (E).

36. Defendant ONHIR's decision to deny Plaintiff Bruce Yazzie relocation benefits is arbitrary, capricious, and an abuse of discretion.

37. Defendant ONHIR's decision is not supported by substantial evidence.

38. Defendant ONHIR's decision is not in accordance with applicable law.

WHEREFORE, Plaintiff Bruce Yazzie respectfully requests that this Court:

(a) Assumes jurisdiction over this matter;

(b) after judicial review, enters judgment holding the eligibility determination of Defendant ONHIR to be contrary to law and sets it aside;

(c) orders the Defendant to issue a new determination that Plaintiff is eligible for relocation benefits and awards those benefits to him;

(d) in the alternative, orders that this case be remanded to ONHIR and directing that the agency grant Plaintiff a hearing *de novo* that is objective and fair;

(e) awards Plaintiff costs and reasonable attorney's fees pursuant to 28

U.S.C. §2412;

(f) grants such other relief as this Court deems just and proper.

Respectfully submitted this the 31st day of December 2020.

<u>s/ Robert S. Malone</u>
    Attorney for Plaintiff Bruce Yazzie