**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bruce Yazzie, | No. CV-20-08348-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Pending before the Court are cross-motions for summary judgment, which are fully briefed. (Docs. 12, 13, 14, 15.) The Court grants summary judgment for Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR") and denies summary judgment for Plaintiff Bruce Yazzie.

**I. Legal Background**

In 1977, land that was jointly used by the Navajo and Hopi tribes was judicially partitioned as authorized by Congress in the Settlement Act (the "Act"). Pub. L. No. 93–531, 88 Stat. 1712 (1974) (formerly codified as amended at 25 U.S.C. §§ 640d to 640d 31). *See generally Clinton v. Babbitt*, 180 F.3d 1081, 1084 (9th Cir. 1999). The Act also directed ONHIR, an independent federal agency, to provide certain benefits to any "head of a household whose household is required to relocate" because of the partition. 25 U.S.C. § 640d-14(b).

Mr. Yazzie seeks these benefits. He is an enrolled member of the Navajo Nation and turned 18 on May 8, 1978. (AR at 16.) Mr. Yazzie's family formerly resided in the

White Cone Chapter, in an area that was partitioned for the use of the Hopi Tribe. (AR at 16.) Mr. Yazzie's mother, Helen Yazzie, was certified for Relocation Benefits and relocated from the Hopi Partitioned Land ("HPL") to the Navajo Partitioned Land in December of 1979. (AR at 68.)

ONHIR received Mr. Yazzie's Application for Relocation Benefits on March 11, 2009. (AR at 16.) In his Application, Mr. Yazzie certified that he moved from the HPL in 1978. (AR at 19.) Social security records indicated that Mr. Yazzie earned more than $1,300 that same year. (AR at 68-69.) After requesting additional information about Mr. Yazzie's move-off date but not receiving a clarifying response, ONHIR denied benefits. (AR at 68-69.) Mr. Yazzie appealed. (AR at 72.)

A hearing was held before an Independent Hearing Officer ("IHO"). (AR at 106.) There, Mr. Yazzie and his brother testified that since 1976, Mr. Yazzie had lived mostly off the HPL with his brother in New Mexico or in Tuba City for school. (AR at 109, 110, 131, 136.) When he dropped out of school in spring 1978, he did not return to his mother's place on the HPL but instead moved in with his brother. (AR at 136.) He turned 18 on May 8, 1978. Later that summer, he began job training, where he earned more than $1,300 and studied for his GED. (AR at 128.) He returned to the HPL intermittently, only when a relative gave him a ride, and he would care for his mother's livestock while visiting. (AR at 109, 120.) In 1979, Mr. Yazzie worked at a sawmill where he again earned more than $1,300. (AR at 124.) And finally, in 1980, Mr. Yazzie enlisted in the Marines. (AR at 124.)

The IHO found that Mr. Yazzie's residence at the time he became an adult was New Mexico. The IHO determined that any visits back to the HPL were "irregular and social" because others facilitated the visits, the frequency of the visits was hazy, his application identified 1978 as the move-off date, and he attended college in New Mexico. (AR at 191-193.) The IHO also found that Mr. Yazzie did not become a head of household until at least 1979 when he worked at the sawmill, because his earlier employment was job training

and he received food and rent assistance from family. (AR at 191-193.) The IHO denied Mr. Yazzie benefits. (AR at 195.) Mr. Yazzie sought judicial review.

**II. Standard**

In an ordinary civil case, summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In this action, Plaintiff seeks judicial review of agency actions pursuant to the Administrative Procedures Act ("APA"). Although cross-motions for summary judgment are the procedural vehicles by which the parties present their arguments, the Rule 56(a) standard does not accurately describe the Court's review. The parties might choose to highlight different parts of the record or take liberties in characterizing or summarizing it, but the administrative record is what it is. There are no fact disputes as that phrase is traditionally understood.

The Court's task instead is to examine the administrative record as it exists and determine, in the context of the specific arguments advanced by Plaintiff, whether the agency's action is "arbitrary, capricious, an abuse of discretion, [] otherwise not in accordance with law," or "unsupported by substantial evidence."[1] 5 U.S.C. § 706(2)(A), (E). This review is "highly deferential" and requires "affirming the agency action if a reasonable basis exists for its decision." *Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010) (quoting *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir.2009)). "Substantial evidence is more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). The plaintiff bears the burden to demonstrate that an agency's actions violate the APA. *Forest Guardians v. U.S. Forest Serv.*, 370 F. Supp. 2d 978, 984 (D. Ariz. 2004) (citing cases).

---

[1] For these reasons, it is the undersigned's view that APA cases would be better resolved via procedures similar to those used in social security disability appeals. *See* LRCiv 16.1. Summary judgment briefing is a poor fit because, at bottom, the Court is tasked with reviewing an administrative record and determining whether the agency's decision comports with the relevant legal standards and is supported by enough evidence.

### III. Analysis

To qualify for relocations benefits, an applicant must prove he (1) was a resident of land partitioned to a Tribe of which the applicant is not a member on December 22, 1974, 25 C.F.R. § 700.147(a); and (2) continued to be a resident of land partitioned to the other tribe when the applicant became a "head of household," *id.* §§ 700.147(e), 700.69(a)(2), 700.69(c). To determine residency, courts must examine the "person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22,227 (May 29, 1984).

The IHO determined that Mr. Yazzie had relocated from the time he became an adult on May 8, 1978. At that time, he lived with relatives off the HPL, where he was enrolled in a job training program and studied for his GED. (AR at 189.) He visited the HPL irregularly, only when relatives would return to visit the HPL. (AR at 189.)

Mr. Yazzie does not dispute that he spent the bulk of his time living with relatives or that he would only return to the HLP irregularly. Instead, he argues that he was temporarily away from his residence at the HLP during 1978 and that he became head of household in the summer of 1978 when he began his job training. This asks the Court to reweigh evidence, which it cannot. If a reasonable basis exists for the IHO's decision, as it does here, the Court must affirm. The relocation finding was supported by substantial evidence and was not arbitrary or capricious. And that finding is dispositive here, because the earliest Mr. Yazzie alleged to have supported himself was summer 1978, after he had relocated.

**IT IS ORDERED** that Defendant's cross-motion for summary judgment (Doc. 13) is **GRANTED** and Plaintiff's motion for summary judgment (Doc. 12) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment accordingly and terminate this matter.

Dated this 3rd day of June, 2022.

Douglas L. Rayes
United States District Judge